Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS with minor modifications the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1A, as:
 STIPULATIONS
1. The plaintiff and defendant E. B. Davis Electric Company (hereafter referred to as "defendant Davis Electric) were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. Defendant Davis Electric was self-insured on 11 February 1995 with CompTrust AGC/Brentwood Service as the administrator.
3. Defendant Junius Burney, deceased, (hereafter referred to as defendant Burney) was non-insured on 11 February 1995.
4. Defendant Burney was a subcontractor to make high voltage terminations for defendant Davis Electric on 11 February 1995 in relation to a construction project at Pembroke State University at Pembroke, North Carolina.
5. Defendant Davis Electric did not secure a certificate of compliance regarding workers compensation coverage or a written waiver regarding his right to coverage from defendant Burney regarding the Pembroke State University on or before 11 February 1995.
6. The plaintiff was a passenger in a truck owned and driven by defendant Burney on 11 February 1995.
7. Defendant Burney died as a result of the motor vehicular accident on 11 February 1995.
8. The plaintiffs medical records from Southeastern Regional Medical Center are admitted into evidence as Stipulated Exhibit #1.
9. Plaintiffs medical records from Duke University Medical Center are admitted into evidence as Stipulated Exhibit #2.
10. Plaintiffs medical records from Cumberland County Emergency Medical Service are admitted into evidence as Stipulated Exhibit #3.
11. Plaintiffs medical records from Cape Fear Valley Medical Center are admitted into evidence as Stipulated Exhibit #4.
12. Plaintiffs medical records from Heritage Family Physicians are admitted into evidence as Stipulated Exhibit #5.
13. Plaintiffs medical records from Fayetteville Diagnostic Center are admitted into evidence as Stipulated Exhibit # 6.
14. Plaintiffs medical records from Fayetteville Orthopedic Clinic are admitted into evidence as Stipulated Exhibit #7.
15. Plaintiffs records from Pro Active Therapy are admitted into evidence as Stipulated Exhibit #8.
16. The North Carolina Collision Report dated 11 February 1995 is admitted into evidence as Stipulated Exhibit #9.
17. Defendant Davis Electrics Answers and Objections to Plaintiffs First Set of Interrogatories are admitted into evidence as Stipulated Exhibit #10.
18. Plaintiffs Responses to Defendant Davis Electrics First Set of Interrogatories to Plaintiff are admitted into evidence as Stipulated Exhibit #11.
19. The construction contract between defendant Davis Electric and the State of North Carolina through Pembroke State University, dated 28 December 1993, is admitted into evidence as Stipulated Exhibit #12.
20. The construction contract between Ellis-Walker Builders, Inc., and the State of North Carolina through Pembroke State University, dated 28 December 1993 is admitted into evidence as Stipulated Exhibit #13.
21. A check made payable to "Mickey Tew in the amount of $5.00, dated 10 October 1995 from Mrs. J. L. Burney is admitted into evidence as Stipulated Exhibit #14.
22. An Attending Physician or Health Care Provider form signed by Dr. Blue on 12 October 1995 is admitted into evidence as Stipulated Exhibit #15.
23. A work rate from Fayetteville Orthopedic Clinic, P. A., dated 28 July 1995 and signed by Dr. Askins is admitted into evidence as Stipulated Exhibit #16.
24. A newspaper article entitled "71-year old killed in traffic accident is admitted into evidence as Stipulated Exhibit #17.
25. A newspaper article entitled "One killed, five injured in wreck is admitted into evidence as Stipulated Exhibit #18.
26. Accident report dated 11 February 1995 is admitted into evidence as Stipulated Exhibit #19.
27. The plaintiffs 1994 W-2 Tax and Wage Statement is admitted into evidence as Stipulated Exhibit #20.
28. Statement from King Electric of Fayetteville dated 2 March 1995 is admitted into evidence as Stipulated Exhibit #21.
29. A Robeson County map is admitted into evidence as Stipulated Exhibit #22.
30. A hand drawn map of the accident location is admitted into evidence as Stipulated Exhibit #23.
31. Plaintiffs 1994 State and Federal Tax Forms and W-2 are admitted into evidence as Stipulated Exhibit #24.
32. Plaintiffs 1995 Tax Returns and W-2s are admitted into evidence as Stipulated Exhibit #25.
33. Six (6) photographs of the accident scene are admitted into evidence as Stipulated Exhibits #26A-F.
34. The issues to be determined by this hearing are:
(1) Whether defendant Burney was subject to or bound by the Act on 11 February 1995?
(2) Whether plaintiff was an employee of defendant Burney on 11 February 1995?
(3) Whether the plaintiff was injured in the course of the performance of work covered by the subcontract between defendant Burney and defendant Davis Electric?
(4) If so, what, if any, benefits is plaintiff entitled?
(5) What was the plaintiffs average weekly wage on 11 February 1995?
***********
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the Deputy Commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. On 11 February 1995 plaintiff was a 52-year old male employed by the City of Fayetteville on 12 April 1962. Plaintiffs job with the city included working as a lineman with high voltage wires both on electrical poles and underground.
2. During plaintiffs employment with the City of Fayetteville, the plaintiff became acquainted with defendant Junius Burney, who was one of the superintendents with the City of Fayetteville.
3. Defendant Junius Burney retired from the City of Fayetteville in approximately 1989. After retiring, defendant Junius Burney continued to do work as an independent electrical contractor in the surrounding area.
4. The plaintiff, while still employed by the City of Fayetteville, would occasionally work sporadically "on the side for defendant Junius Burney. The plaintiff performed this work for defendant Junius Burney on weekends, after regular hours or on vacation days. The plaintiff worked in this manner for defendant Junius Burney four of five times in the past nine or ten years.
5. Defendant Junius Burney paid the plaintiff $20.00 per hour during the four or five times the plaintiff previously worked for defendant Junius Burney.
6. On the evening of 10 February 1995 defendant Junius Burney requested that plaintiff assist him with an electrical job at Pembroke State University on 11 February 1995. Defendant Junius Burneys regular assistant had the flu and was unable to do the job.
7. Between 6:30 a.m. and 7:00 a.m., the plaintiff went to defendant Burneys home on 11 February 1995. The plaintiff left his own vehicle at defendant Burneys home in Fayetteville and rode with defendant Burney to the work site in Pembroke pursuant to the terms of Mr. Burneys employment contract with the plaintiff. Defendant Burney had always provided transportation to the work sites because the equipment was located in defendant Burneys truck and it allowed the two men to arrive at the work site at the same time. Defendant Junius Burney drove his vehicle, a white 1987 GMC pickup truck. The plaintiff only took his hard hat and gloves when he got into defendant Burneys truck.
8. The plaintiff and defendant Burney arrived at Pembroke State University approximately 8:00 a.m. on 11 February 1995. Upon arrival, defendant Burney retrieved the key to the electrical switch cabinet from an employee of E. B. Davis Electrical. The cabinet which held the high voltage switches is kept locked unless someone authorized is working on the equipment.
9. The plaintiff and defendant Burney worked approximately eight (8) hours and terminated several high voltage cables. During these terminations both the plaintiff and defendant Burney worked inside the electrical cabinet.
10. At the end of the workday defendant Burney and the plaintiff got back in defendant Burneys truck to travel home. The two men had only traveled a few miles from the work site when the plaintiff and defendant Burney engaged in a conversation. As a result of this conversation, defendant Burney made a U-turn at the intersection of State Road 1340 and 1515 and headed back in the direction of the work site at Pembroke State University.
11. Within seconds after defendant Burney made the U-turn, a collision occurred. Defendant Burney died instantly as a result of the collision. The plaintiff was thrown clear of the pickup truck and sustained serious injuries to his intestines, kidneys, ribs, back and shoulders.
12. The plaintiff was transferred via ambulance to Southeastern Regional Hospital in Lumberton where he received treatment for his injuries. As a result of the 11 February 1995 accident, plaintiffs left kidney was permanently damaged and nonfunctioning. A few weeks later the plaintiff underwent surgery at Duke University Medical Center to remove part of his intestines, damaged as a result of the 11 February 1995 motor vehicle collision.
13. At the time of hearing the plaintiff was 55 years of age. The plaintiffs primary adult work experience included thirty-three (33) years as a lineman. This work is highly skilled but involves heavy manual labor. Due to the injuries plaintiff sustained in the 11 February 1995 motor vehicle accident, the plaintiff is no longer physically able to perform work as a lineman. The plaintiff completed high school but has no additional vocational training. The plaintiff has an above average IQ, but is deficient in reading skills. The plaintiffs physical problems resulting from the automobile accident include low back pain, some limited mobility of his left shoulder, blurred vision and right kidney damage. Additionally, as a result of damage from the collapse of one of his lungs, the plaintiff experiences a lack of stamina. The plaintiff can only lift fifteen to twenty (15-20) pounds, stand for thirty to forty (30-40) minutes, walk for a half mile or sit for twenty to thirty (20-30) minutes. The plaintiff cannot stoop, kneel, crouch or crawl due to his injuries. The plaintiff can only climb a few steps and has poor balance. The plaintiff is a poor candidate for vocational retraining due to his age, education, previous work experience and physical disabilities as a result of the accident on 11 February 1995.
14. As a result of the 11 February 1995 injury, the plaintiff is incapable of earning wages in the same or any other employment.
15. At the time of the accident, the plaintiffs position as a lineman with the City of Fayetteville paid approximately $46,000.00 per year. As a result of the accident, the plaintiff was unable to return to this job. The plaintiff took medical leave with his job with the City until he retired on 31 December 1995.
16. Defendant Junius Burney was non-insured for workers compensation on 11 February 1995. There is insufficient evidence to determine whether defendant Burney had three (3) or more employees on that date.
17. Defendant Davis Electric is a North Carolina company engaged in the business of performing electrical service work. Defendant Davis Electric subcontracted with defendant Junius Burney to make high voltage terminations and failed to secure a certificate of compliance regarding workers compensation coverage or a written waiver regarding his right to coverage from defendant Junius Burney. Defendant Davis Electric had three or more regular employees on February 11, 1995.
18. Defendant Davis Electric did not make payments to subcontractor Junius Burney for work performed at Pembroke State University on or before 11 February 1995. However, a payment was made to the widow, Mildred Burney, on 20 March 1995, for services provided by defendant Burney in the amount of $1,085.00 for fifteen (15) high voltage terminators.
19. Sometime following the accident, the plaintiffs wife drove him over to Mildred Burneys house. The plaintiff at first was not going to accept any payment for his services on the day of the accident but Ms. Burney insisted on paying the plaintiff what her late husband owed. The plaintiff told Ms. Burney $150.00 would be sufficient payment but Ms. Burney only had $145.00 in cash at the time. Ms. Burney later mailed the plaintiff a check for $5.00.
20. The plaintiff worked sporadically for the defendant Junius Burney. Due to the shortness of time plaintiff worked for defendant Junius Burney and the nature or terms of the employment, it is impractical to compute plaintiffs average weekly wage based on a 52 week period. The plaintiffs actual wages from defendant Burney, which are based on one days labor on 11 February 1995, are insufficient to calculate an average weekly wage. A person of the same grade and character as the plaintiff employed in the same class of employment in the plaintiffs community as an electrical lineman would have earned $15.00 per hour, or $600.00 per week prior to 11 February 1995; however, plaintiffs actual earnings in his job as a lineman or line erector with the City of Fayetteville exceeded $15.00 per hour. It is fairest to all parties to compute plaintiffs average weekly wage based on wages of a person of the same grade or character of employment as plaintiff employed in the same community.
21. The plaintiffs injuries arose out of and in the course of his employment with defendant Junius Burney. The plaintiff rode in defendant Burneys vehicle to and from the job site pursuant to defendant Burneys contract of employment with plaintiff. Although the plaintiff and defendant Burney had left the job site at Pembroke, the greater weight of the evidence is that defendant Burney executed the U-turn to return to the job site to either return the key to the electrical cabinet, lock the cabinet, or to speak to someone at the job site. Defendant Davis Electrics attempts to explain the U-turn as defendant Burney going to a store to get tobacco rather than back to Pembroke is unpersuasive when one views the photographs from the accident scene. Stipulated Exhibit #26A clearly depicts two (2) packages of tobacco fallen from defendant Burneys vehicle. One of these packages appears less than full but the other package appears full. It is illogical that defendant Burney would make a U-turn to buy more chewing tobacco when he had over one pack in his possession. These photographs were taken immediately after the accident while defendant Burneys body was still in the vehicle. Since the vehicle belonged to defendant Burney and the plaintiff does not use tobacco, the greater weight of the evidence indicates the tobacco belonged to defendant Burney.
22. Defendant Davis Electric was not prejudiced by any alleged delay in the filing of plaintiffs Form 18. Defendant Davis Electric knew of the fatal accident which occurred on 11 February 1995 and the fact and circumstances surrounding the accident because they paid defendant Junius Burneys widow rather than paying defendant Junius Burney for services provided at Pembroke. Defendant Davis Electric cannot now raise a N.C. Gen. Stat. 97-22
defense in contentions when it knew about the wreck all along. Any failure to follow through with investigations was their own choice.
23. Plaintiffs employment with defendant Junius Burney on 11 February 1995, while terminating high voltage cables was irregular, unpredictable, sporadic and brief in nature. However, plaintiff was engaged on 11 February 1995 in the course of the trade, business, profession or occupation of his employer, defendant Junius Burney.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 11 February 1995 the plaintiff was an employee of defendant Junius Burney and was engaged in the course or trade of high voltage electrical work, which is the regular business of defendant Junius Burney. N.C. Gen. Stat. 97-2(2).
2. On 11 February 1995 the plaintiff was injured by accident arising out of and in the course of his employment with defendant Junius Burney and in the course of the performance of the work subcontracted from defendant Davis Electric to defendant Junius Burney. N.C. Gen. Stat. 97-2(6).
3. Defendant Junius Burney was uninsured under the N.C. Workers Compensation Act. N.C. Gen. Stat. 97-94.
4. Any principal contractor, immediate contractor or subcontractor who sublets any contract for the performance of any work without first requiring from such subcontractor or obtaining from the Industrial Commission a certificate issued by a workers compensation carrier, or a certificate of compliance issued by the Department of Insurance to a self-insured subcontractor is liable, irrespective of whether such subcontractor has regularly in service fewer than three (3) employees in the same business within this state for injuries to employees of the subcontractor arising out of and in the course of employment to the same extent as the subcontractor would be. N.C. Gen. Stat. 97-19.
5. E.B. Davis Electrical Company subcontracted with defendant Junius Burney to make high voltage terminations for E.B. Davis Company on or before February 11, 1995, at Pembroke State University, Pembroke, North Carolina. Defendant Davis Electric did not obtain a certificate of insurance (or compliance) from defendant Junius Burney. Plaintiff was an employee of defendant Junius Burney and also a "statutory employee of defendant Davis Electric. Defendant Davis Electric is therefore liable for injuries to plaintiff by accident which arose out of and in the course of the performance of such subcontract. N.C. Gen. Stat.97-19.
6. Due to plaintiffs brief period of employment with defendant Junius Burney, it in impractical to compute the plaintiffs average weekly wage during a fifty-two (52) week period. A person in the same grade and character of employment as the plaintiff employed in the same class of employment in the same locality or community would have earned $600.00 per week, yielding a compensation rate of $400.00 per week. This method of computation is fairest to all parties. N.C. Gen. Stat. 97-2(5).
7. The plaintiffs injuries to his back, shoulder, left kidney, ribs and bowels proximately resulted from the motor vehicle accident of February 11, 1995 arising out of and in the course of his employment. Plaintiff is entitled to compensation for permanent and total disability at a rate of $400.00 per week for the remainder of his life, barring change of condition. N.C. Gen. Stat. 97-29.
8. Plaintiff is entitled to have defendant Davis Electric provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiffs disability for the remainder of his life. N.C. Gen. Stat. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to a reasonable attorney fee approved herein, defendant Davis Electric shall pay to plaintiff $400.00 per week from 11 February 1995 for the remainder of plaintiffs life, barring change of condition. Accrued compensation shall be payable in a lump sum.
2. Defendant Davis Electric shall provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiffs disability for the remainder of his life.
3. A reasonable attorney fee in the amount of twenty-five percent (25%) of the compensation in Paragraph 1 of this AWARD is approved for plaintiffs counsel. Plaintiffs counsel shall receive a lump sum from the accrued compensation and thereafter receive every fourth (4th) check.
4. Defendant Davis Electric shall pay the costs due this Commission.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
Participated in review of case but retired before decision was issued.
S/_________________ J. HOWARD BUNN, JR. CHAIRMAN
BSB:md